```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

FLORAL SHIPPING LTD.                            CIVIL ACTION

VERSUS                                          NO: 14-879

EGYPTIAN BULK CARRIERS                          SECTION: R
```

### ORDER AND REASONS

Plaintiff Floral Shipping Ltd. moves for an order compelling garnishee Cargill, Inc. to deposit the sum of $162,286.15, or in the alternative, $353,399.05, into the registry of the Court.[1] For the following reasons, the Court denies the motion.

### I. BACKGROUND

This dispute arises out of a charter party between plaintiff Floral Shipping Ltd. and defendant Egyptian Bulk Carriers (EBC).

On April 16, 2014, Floral Shipping filed a Verified Complaint against EBC, in which it alleged that EBC chartered the M/V OKIALOS under a charter party dated January 16, 2014 (made retroactive to January 11, 2014), and further that EBC breached the charter by failing to pay charter hire and other amounts owed under the charter party.[2] Floral Shipping alleged damages in the amount of $1,259,539.08.[3] The damages allegedly arise from EBC's non-payment of the Second and Third Hire Statements issued by Floral Shipping

---

[1] R. Doc. 32.

[2] R. Doc. 1.

[3] *Id.* at 5.

to EBC ($304,687.50);[4] EBC's breach of the charter party by failing to pay for bunkers delivered to the vessel at Prince Rupert, Canada ($454,950.00);[5] and future damages reflecting the anticipated cost of replenishing bunkers onboard the vessel upon redelivery to Floral Shipping ($409,525.60), and additional charter hire and related costs due on the vessel's redelivery on April 30, 2014 ($90,375.98).[6]

At the time Floral Shipping filed the Verified Complaint, EBC was a foreign entity not within the Eastern District of Louisiana within the meaning of Rule B of the Supplemental Rules for Certain Admiralty Claims of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. Adm. Supp. R. B Adv. Comm. N. ("The time for determining whether a defendant is 'found' in the district is set at the time of filing the verified complaint that prays for attachment and the affidavit required by Rule B(1)(b)."). Accordingly, Floral Shipping moved this Court for an order authorizing the issuance of writs of attachment under Rule B seeking the attachment and garnishment of all property of EBC within the territorial jurisdiction of the United States District Court for the Eastern District of Louisiana.[7] The Court granted the Motion for Order

---

[4] R. Doc. 1, Exs. 4 & 5.

[5] R. Doc. 1, Ex. 2.

[6] R. Doc. 1, Ex. 6.

[7] R. Doc. 2.

Authorizing the Issuance of a Writ of Attachment on April 16, 2014.[8]  The Clerk of Court issued a Writ of Foreign Attachment commanding the attachment of all property of EBC in the hands of Cargill, Inc., and/or Southport Agencies, Inc., as garnishees.[9]

Because the property to be attached was neither a vessel nor tangible property on board a vessel, Floral Shipping moved under Rule B(1)(d)(ii)(B) that Mark Henry be appointed as process server.[10]  The Court granted this motion on April 16, 2014.[11]  On April 17, 2014, Mr. Henry served the Writ of Attachment, together with Floral Shipping's Verified Complaint, a summons, and copies of all motions and orders filed as of that date on garnishees Southport Agencies and Cargill.[12]

Cargill responded initially that it did not have any property of EBC in its possession at the time the writ was served.[13]  After various clarifications, Cargill admitted that it had recently chartered four vessels from EBC--the M/V NOVO MESTO, M/V HERMANN S, M/V OCEAN PRELATE, and M/V BULK HONDURAS--through a charter party

---

[8]    R. Doc. 5.

[9]    R. Doc. 6.

[10]   R. Doc. 4.

[11]   R. Doc. 7.

[12]   *See* R. Docs. 10 (Cargill) & 11 (Southport Agencies).

[13]   *See* R. Doc. 32, Ex. A at 1.

3

between EBC and Cargill entered into on August 13, 2013.[14] Cargill further admitted that considering both *predicted* demurrage and despatch resulting from the voyages of those four vessels, Cargill still owed a net payment to EBC totaling $305,907.43.[15] Cargill later revised this amount, after receiving finalized demurrage and dispatch costs, to $62,170.06.[16] This amount reflects a credit in favor of EBC of $28,472.22 for the NOVO MESTO, a credit in favor of EBC of $27,109.36 for the OCEAN PRELATE, a net credit in favor of EBC of $36,158.93 for the BULK HONDURAS (reflecting $83,312.50 in demurrage owed to EBC and $47,153.57 despatch owed to Cargill), and a debt owed to Cargill of $29,570.31 for the HERMANN S.[17] While admitting to holding this credit, Cargill contended that it was entitled to set off this credit in favor of EBC by a debt EBC owed to Cargill in the amount of $353,598.43.[18] Considering this set off, Cargill represented that it possessed no credits, debts, or effects of EBC.

---

[14] *Id.* at 2.

[15] *Id.* The amounts are as follows: $390.63 owed to Cargill for the NOVO MESTO; $9,941.55 due to EBC for the HERMANN S; $105,625 due to EBC for the OCEAN PRELATE; and $190,731.51 due to EBC for the BULK HONDURAS.

[16] R. Doc. 32, Ex. B at ¶ 11.

[17] R. Doc. 32, Ex. B at ¶ 7.

[18] *Id.*

4

According to Cargill, its right of set off derives from a agreement entered into between itself, Cargill International SA ("CISA"), an affiliate of Cargill, and EBC. Cargill represents that, in January 2014, EBC began defaulting on its obligations to the owners of the vessels that it had sub-chartered to Cargill and CISA. To assure uninterrupted passage of the chartered vessels, CISA paid certain voyage expenses that were incurred by vessels that EBC chartered to Cargill and CISA, and that were EBC's obligation to pay. As of March 19, 2014, CISA's payments of EBC's obligations totaled $1,513,598.43 (the "Debt"). On March 19, 2014, as consideration for these payments, EBC entered into a debt agreement with Cargill and CISA that obligated EBC to repay the Debt, and granted CISA, Cargill, and any other Cargill-affiliated entity a right to set off any amounts that they owe to EBC under any of the charter parties or otherwise against the Debt. The debt agreement acknowledged the Debt as "due and owing[.]"[19] The setoff provision of the debt agreement stated:

> We [EBC] agree that any freight, demurrage, or any other amounts owed by CISA, Cargill, Incorporated, or any other Cargill affiliated entity to EBC under the Charterparties (or any one of them) or otherwise may be set off against the Debt.

In a letter dated April 23, 2014, Cargill and CISA sought repayment of the Debt in full from EBC.[20]

---

[19] R. Doc. 32, Ex. O at 1.

[20] R. Doc. 32, Ex. O.

Floral Shipping asserts that Cargill, for the purposes of this dispute, cannot set off any credit it held in favor of EBC on April 17, 2014 against the Debt because it had not yet exercised its right of set off.  According to Floral Shipping, this is evidenced by Cargill and CISA's April 23, 2014 letter requesting full payment of the debt from EBC, rather than a reduced amount reflecting a set off.[21]  Cargill asserts that it is entitled to set off the credit.

Floral Shipping also offers evidence that it contends shows that Cargill has admitted holding a credit of at least $161,244.74 in favor of EBC on April 17, 2014.  First, Floral Shipping points to Cargill's admission that it owed a $28,472.22 credit to EBC for demurrage arising from the NOVO MESTO.[22]  Second, as to the HERMANN S, Floral Shipping claims Cargill owes EBC $23,392.07.  Floral Shipping points to Cargill's initial admission, on May 30, 2014, that it owed a $9,941.55 credit to EBC for demurrage arising from the HERMANN S.  On August 5, 2014, Cargill stated that this initial estimate was wrong and that, instead, EBC owed Cargill $29,750.31 for despatch arising from the HERMANN S.  On September 17, 2014, however, Cargill issued an invoice to EBC reflecting that Cargill owed EBC $23,392.07 arising from the HERMANN S.[23]

---

[21]  *Id.*

[22]  R. Doc. 32, Ex. B at ¶ 11.

[23]  R. Doc. 32, Ex. H.

Third, as to the OCEAN PRELATE, Cargill initially admitted it owed EBC a debt of $105,625,[24] but later revised the amount to $27,109.36 based on a credit EBC owed to Cargill.[25] Floral Shipping requests that the Court recognize the $27,109.36 amount, or the $105,625 amount if Cargill lacks sufficient documentation to support the lesser amount, as what Cargill owed.

Finally, as to the BULK HONDURAS, Floral Shipping points to a freight invoice dated September 17, 2014, showing that Cargill owed EBC a credit of $82,271.09. Cargill originally represented that it possessed a credit in EBC's favor in the amount of $190,731.51, and Floral Shipping urges the Court to adopt this as the amount Cargill owed EBC if Cargill is unable to demonstrate why it owed Cargill only $82,271.09.

In sum, Floral Shipping contends that Cargill possessed a credit of at least $161,244.74 on April 17, 2014 in favor of EBC, and that, because Cargill failed to exercise its right of set off by this time, Cargill is not entitled to set off this amount under the debt agreement between Cargill/CISA and EBC. Because Cargill initially admitted to possessing a $305,907.43 credit in favor of EBC, Floral Shipping moves, in the alternative, for the Court to recognize this as the amount Cargill owed EBC should Cargill fail to produce supporting documentation suggesting why the later

---

[24] R. Doc. 32, Ex. A at 2.

[25] R. Doc. 32, Ex. B at 6.

reduction in this amount is appropriate.[26] In opposition, Cargill contends that it possessed a credit only in the amount of $62,170.06 in favor of EBC, and that, regardless, it is entitled to set off this credit under the debt agreement.

**II. ANALYSIS**

Admiralty Rule B(1)(a) provides that in an in personam action:

If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property--up to the amount sued for--in the hands of garnishees named in the process.

Rule B(3)(a) provides in relevant part: "If the garnishee admits any debts, credits, or effects [of the defendant in the garnishee's hands], they shall be held in the garnishee's hands or paid into the registry of the court, and shall be held in either case subject to the further order of the court."

**A. Cargill's Admission of Credit in Favor of EBC**

The Court first addresses Cargill's admission of credit it holds in favor of EBC. Floral Shipping bears the burden to establish a right to attachment. *See Cargo-Levant*

---

[26] In its motion, Floral Shipping refers to $353,399.04 as the amount the Court should recognize, but this is the amount of set off EBC now claims, not the credit Cargill once admitted is possessed in favor of EBC. Accordingly, the Court construes Floral Shipping's reference to the $353,399.04 figure as a mistake and substitutes the $305,907.43 figure.

*Schiffahrtsgesellschaft v. PSL Lim.*, Civ. A. No. 12-1363-RGA-CJB, 2014 WL 2452744, at *6 (D. Del. May 30, 2014) ("It is a plaintiff's burden to establish a right to attachment."). Courts applying Rule B(3)(a) deem a debt or credit admitted if the record presents no factual dispute. *See id.; Fla. Conference Ass'n of Seventh-Day Adventists v. Kyriakides*, 151 F. Supp. 2d 1223, 1226 (C.D. Cal. 2001).

As stated, on May 30, 2014, Cargill admitted to possessing a credit in favor of EBC in the amount of $305,907.43 relating to Cargill's use of the NOVO MESTO, HERMANN S, OCEAN PRELATE, and BULK HONDURAS.[27] At the time, Cargill had not received from EBC its calculation of laytime or any invoices for demurrage or dispatch, so this amount represented an estimate.[28] EBC submitted its laytime calculations to Cargill on July 31, 2014. Using these figures, Cargill submitted a new statement on August 5, 2014 indicating that it owed only $62,170.06 in favor of EBC.[29] In support, Cargill attached an e-mail from EBC setting forth its demurrage and dispatch figures.[30] Cargill provided an accounting as follows:

---

[27]    R. Doc. 32, Ex. A at 2.

[28]    R. Doc. 32, Ex. B at 4-5.

[29]    *Id.* at 6.

[30]    *Id.* at 7-8.

| Vessel | Description | Amount |
|---|---|---|
| NOVO MESTO | Demurrage to EBC | $28,472.22 |
| OCEAN PRELATE | Demurrage to EBC | $27,109.36 |
| BULK HONDURAS | Demurrage to EBC | $83,312.50 |
| HERMANN S | Despatch to Cargill | -$29,570.31 |
| BULK HONDURAS | Despatch to Cargill | -$47,153.57 |

**Net Demurrage to EBC  $62,170.06**

Floral Shipping's account is consistent with Cargill's assessment regarding the NOVO MESTO, in the amount of $28,472.22, and regarding the OCEAN PRELATE, in the amount of $27,109.36. These amounts are therefore undisputed and the Court accepts them as representing the amount Cargill owed to EBC notwithstanding any right of set off.

Floral Shipping, however, presents evidence contradicting Cargill's estimates related to the BULK HONDURAS and HERMANN S. Regarding the BULK HONDURAS, Cargill represented on August 4, 2014, that it held a net credit in favor of EBC of $36,158.93. On September 17, 2014, however, Cargill issued a freight invoice to EBC showing that Cargill owed EBC $82,271.09. In its opposition, Cargill does not challenge Floral Shipping's reliance on this invoice and makes no effort to show that this is not the amount Cargill owed to EBC for the BULK HONDURAS. Accordingly, given that there is no factual dispute, the Court accepts the $82,271.09

figure as the amount Cargill owed to EBC related to the BULK HONDURAS.

As to the HERMANN S, Cargill represented on August 4, 2014, that EBC owed it $29,570.31. On September 17, 2014, however, Cargill issued an invoice to EBC indicating that Cargill held a credit in favor of EBC of $23,392.07. Again, Cargill does not challenge Floral Shipping's reliance on this invoice and makes no effort to show that this is not the amount Cargill owed to EBC related to the HERMANN S. Accordingly, given that there is no factual dispute, the Court accepts the $23,392.07 figure as the amount owed by Cargill to EBC related to the HERMANN S.

In sum, the Court finds that Cargill has admitted to holding a credit in favor of EBC in the amount of $161,244.74 notwithstanding any right of set off. The Court does not find that Cargill has admitted owing the higher amounts suggested in Cargill's initial responses ($105,624 for the OCEAN PRELATE and $190,731.51 for the BULK HONDURAS), as Floral Shipping urges in the alternative, because Floral Shipping has not presented evidence, that these figures are accurate.

**B. Cargill's Right of Set Off**

Accepting that Cargill possesses a credit in favor of EBC in the amount of $161,244.74, the Court examines whether Cargill's right of set off negates the credit. Floral Shipping contends that

if Cargill did not exercise its set-off right before Floral Shipping's attachment on April 17, 2014, it cannot do so now.

In *Wilhelmsens Dampskibaktiesselskab v. Canadian Venezuelan Ore Co.*, 224 F. 881 (2d Cir. 1915), the Second Circuit held that a garnishee under attachment in admiralty may set off a claim in his favor against the defendant. *Id.* at 885-86 (citing *Schuler v. Israel*, 120 U.S. 506 (1887); *North Chicago Rolling Mill v. St. Louis Ore Co.*, 152 U.S. 596 (1894); *Thebideau v. Cairns*, 171 F. 233 (D. Me. 1909)). More recently, the Ninth Circuit stated that "it seems clear that a garnishee may set-off matured obligations at the date of garnishment . . . ." *Schirmer Stevedoring Co. Ltd. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 194 (9th Cir. 1962); *see also Am. Smelting & Refining Co. v. Naviera Andes Peruana, S.A.* 208 F. Supp. 164, 170-71 (N.D. Cal. 1962), *aff'd sub nom. San Rafael Compania Naviera, S.A. v. American Smelting & Refining Co.*, 327 F.2d 581 (9th Cir. 1964) (holding that garnishee is entitled to set off "before the creditors of the insolvent corporation can take any of the fund"); *W. Bulk Carriers (Australia), Pty. Ltd. v. P.S. Intern., Ltd.*, 762 F. Supp. 1302, 1306 n.3 (S.D. Ohio 1991) ("The garnishee . . . may set off against any of the defendant's assets in its possession claims it has against the defendant." (quoting 7A Moore's Federal Practice ¶ B.11, at B-501 (2d ed. 1988)).

Citing this line of cases, this same rule is expressed in several authoritative treatises. For instance, 29 F. Joseph

Bersch, III, *et al.*, Moore's Federal Practice § 705.04 (3d ed. 2012) provides that under Rule B(3)(a):

> If the garnishee admits that he holds property of the defendant, he may either hold it subject to the court's jurisdiction, or else simply turn it over to the court. The garnishee is entitled to assert a right to setoff for any claim that it may have against the defendant.

*Id.* (citing *San Rafael Compania Naviera*, 327 F.2d at 581; *Wilhelmsens Dampskibaktiesselskab*, 224 F. at 881). Likewise, 2 Thomas J. Schoenbaum, Admiralty & Mar. Law § 21-2 (5th ed. 2014), states that under Rule B(3)(a), "[t]he garnishee is entitled to a set-off of any claim it may have against the defendant." (citing *San Rafael Compania Naviera*, 327 F.2d at 581).

Here, the debt agreement executed between Cargill/CISA and EBC on March 19, 2014, acknowledges $1,513,598.43 as "due and owing" to Cargill and CISA (or to any other Cargill entity designated).[31] With regard to the HERMANN S and the NOVO MESTO, the agreement acknowledges a debt owed by EBC of $46,922 and $224,274.43, respectively, totaling $353,598.43.[32] The agreement also provides, "We agree that any freight, demurrage, or any other amounts owed by CISA, Cargill, Incorporated, or any other Cargill affiliated entity to EBC under the Charterparties (or any one of them) or otherwise may be set off against the Debt."[33] Thus, as of March 19, 2014,

---

[31] R. Doc. 32, Ex. O at 1.

[32] *Id.*

[33] *Id.* at 2.

almost one month before Floral Shipping's service of the writ of attachment on Cargill, EBC had acknowledged this debt as "due and owing" and had given Cargill the right to set off any amounts it owed EBC against the debt.

Cargill now claims a right of set off in the amount of $353,598.43. Under the authorities cited, Cargill is entitled to set off the credit it holds in EBC's favor against the debt even if it had not exercised this right at the time of attachment. The debt was "due and owing," and the right of set off was in existence well before Floral Shipping served the writ of attachment. Because Cargill holds a credit of only $161,244.74, Cargill's right to set off the $353,598.43 debt negates the credit. Accordingly, Cargill holds no credits, debts, or effects to which Floral Shipping could have attached.

Floral Shipping cites *Aurora Mar. Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44 (2d Cir. 1996), for the principle that a maritime garnishee may not exercise a set-off right after attachment, but this case is inapposite. At issue in *Aurora* was whether a garnishee-bank could exercise a statutory right of set off provided by New York state law after plaintiffs had obtained Rule B attachments. The district court held that plaintiffs' "first-in-time Rule B attachments had priority over [the garnishee's] later-executed set-off right." *Id.* at 47. The Second Circuit, however, rejected this reasoning and held that Rule B

14

preempted the state law providing debtors a right of set off after the issuance of a warrant of attachment under Rule B. *Id.* at 47-49 (relying on *American Dredging Co. v. Miller*, 510 U.S. 443 (1994)). Because the set-off right derived from New York state law, the court expressed concern that the law would "undermine the consistent nationwide application of Rule B . . . ." *Id.* at 48. The court emphasized that "leaving the functional usefulness of Rule B attachments to the vagaries of fifty states would create a measure of anarchy in a federal scheme designed to insure that maritime actors may be sued where their property is found." *Id.* at 48-49.

    Here, *Aurora* does not advance Floral Shipping's position for two reasons. First, the court in *Aurora* rejected the first-in-time rule, as espoused by the district court, for which Floral Shipping cites it. Had the Second Circuit simply recognized a first-in-time rule, it would not have reached the issue of preemption. Second, the court's concerns that "the vagaries of the laws of fifty states" would jeopardize uniform enforcement of maritime law are not present here. Cargill's right of set off derives from a private contract between itself and EBC executed almost a full month before Floral Shipping's attempted garnishment. *See Oceanfocus Shipping Ltd. v. Naviera Humbolt, S.A.*, 962 F. Supp. 1481, 1485 (S.D. Fla. 1996) ("While *Aurora* concerned a statutorily-defined set-off right that the bank invoked only after an otherwise

15

lawful attachment had been made, the case at bar involves a private contractual borrowing privilege created well in advance of [plaintiff's] attempt to perfect service.").

Floral Shipping also points to the April 23, 2014 letter from CISA/Cargill to EBC requesting full payment of the $1,513,598.43 debt as evidence that Cargill sought full repayment of the debt and not to exercise its right of set off. But that Cargill and CISA requested full payment of the debt does not preclude Cargill from exercising its set-off right. EBC's satisfaction of the debt would preclude exercise of Cargill's right of set off, but there is no evidence that EBC paid Cargill any of the requested funds. Therefore, absent a showing that the debt has been satisfied in full, Cargill is entitled to set off the credit it holds in favor of EBC against the debt EBC owes Cargill.

Accordingly, Floral Shipping has not met its burden to establish a right of attachment to any funds held by Cargill. Floral Shipping's motion is denied.

### III. CONCLUSION

For the foregoing reasons, Floral Shipping's motion is DENIED.

New Orleans, Louisiana, this 13th day of August, 2015.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE